RYAN BALL (SBN 321772)
*RBall@goodwinlaw.com*
MATTHEW T. BILLECI (SBN 329014)
*MBilleci@goodwinlaw.com*
**GOODWIN PROCTER LLP**
660 Newport Center Dr., Suite 450
Newport Beach, CA 92660
Tel.: +1 949 743 3400
Fax: +1 213 623 1673

Attorneys for Defendant
NERDWALLET, INC.

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

## SAN FRANCISCO DIVISION

| | |
|---|---|
| FATIMA DAVIS, on behalf of herself and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> NERDWALLET, INC. a Delaware Corporation; and DOES 1-100, inclusive, <br><br> Defendant. | Case No. 3:26-cv-02384-TLT <br><br> **DEFENDANT NERDWALLET, INC.'S NOTICE OF MOTION AND MOTION TO STAY** <br><br> Date: October 13, 2026 <br> Time: 2:00 p.m. <br> Courtrm: 9 <br> Judge: Hon. Trina L. Thompson |

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

NERDWALLET'S MOTION TO STAY                     CASE NO. 3:26-CV-02384-TLT

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE THAT** Defendant NerdWallet, Inc. ("NerdWallet" or "Defendant") will, and hereby does, move this Court for an Order staying the claims of Plaintiff Fatima Davis, and other similarly situated pending a ruling from the California Court of Appeal in *Variety Media, LLC v. The Superior Court of the County of Los Angeles*, Case No. B350578 and from the Ninth Circuit in *Drummer v. CoStar Group, Inc.*, 26-1160 (9th Cir. 2026). This Motion will be heard on October 13, 2026 at 2:00 p.m., in the courtroom of the Honorable Trina L. Thompson, located at the San Francisco Courthouse, Courtroom 9, Floor 19, 450 Golden Gate Avenue, San Francisco, CA 94102.

This Motion is based upon this Notice of Motion and Motion, the accompanying Memorandum of Points and Authorities, all of the papers on file in this action, and any other such evidence and argument that may be presented to the Court prior to its ruling on the Motion.

Respectfully submitted,

Dated:     June 24, 2026                   By: */s/ Ryan Ball*
                                               RYAN BALL
                                               *RBall@goodwinlaw.com*
                                               MATTHEW T. BILLECI
                                               *MBilleci@goodwinlaw.com*
                                               **GOODWIN PROCTER LLP**

                                               Attorneys for Defendant
                                               NERDWALLET, INC.

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

1

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 3

    A.   The *Variety* Appeal ............................................................................................. 3

    B.   The *Drummer* Appeal .......................................................................................... 4

    C.   Related Cases Already Stayed Pending *Variety* and *Drummer* .......................... 5

LEGAL STANDARD ......................................................................................................... 6

ARGUMENT ...................................................................................................................... 7

    A.   Plaintiff Will Suffer No "Damage" From the Stay. ............................................. 7

    B.   Absent the Stay, NerdWallet Would Be Severely Prejudiced. ............................ 8

    C.   A Stay Promotes the Orderly Course of Justice .................................................. 9

        1.   The *Variety* Appeal ................................................................................ 10

        2.   The *Drummer* Appeal ............................................................................. 11

        3.   *Variety* and *Drummer* Are Potentially Dispositive Even if Not Wholly Dispositive. ..... 12

        4.   The Presence of Two Appellate Proceedings Makes the Case for a Stay Even More Compelling ............................................................................ 13

CONCLUSION ................................................................................................................. 14

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Adams v. Cnty. of Sacramento*,
    2023 WL 3413672 (E.D. Cal. May 12, 2023)........................................................................ 12

*Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water Dist.*,
    2015 WL 13764632 (C.D. Cal. Sep. 8, 2015)..................................................................... 7, 8

*Aleisa v. Square, Inc.*,
    493 F. Supp. 3d 806 (N.D. Cal. 2020) ................................................................................. 8

*Allen v. Protective Life Ins. Co.*,
    2024 WL 4957754 (E.D. Cal. Nov. 27, 2024) ................................................................. 6, 10

*Alzheimer's Inst. of Am. v. Elan Corp. PLC*,
    2011 WL 6748634 (N.D. Cal. Dec. 22, 2011) ..................................................................... 6

*Calvillo Manriquez v. DeVos*,
    2018 WL 5316174 (N.D. Cal. Aug. 30, 2018)................................................................... 12

*Canal Props. LLC v. Alliant Tax Credit V, Inc.*,
    2005 WL 1562807 (N.D. Cal. June 29, 2005) ............................................................... 13, 14

*Cartmill v. Sea World, Inc.*,
    2010 WL 4569922 (S.D. Cal. Nov. 5, 2010) ..................................................................... 10

*Clinton v. Jones*,
    520 U.S. 681 (1997)............................................................................................................. 7

*CMAX, Inc. v. Hall*,
    300 F.2d 265 (9th Cir. 1962)............................................................................................... 7

*Deivaprakash v. Condé Nast Digital*,
    Case No. 3:25-cv-04021-RFL, (N.D. Cal)........................................................................... 6

*Drummer v. CoStar Group, Inc.*,
    Case No. 26-1160 (9th Cir. 2026).............................................................................. *passim*

*Drummer v. CoStar Grp., Inc.*,
    2025 WL 3190656 (C.D. Cal. Oct. 22, 2025)...................................................................... 4

*Drummer v. CoStar Grp., Inc.*,
    2026 WL 712922 (C.D. Cal. Feb. 13, 2026)........................................................................ 5

*Echevarria v. Aerotek, Inc.*,
    2019 WL 3207812 (N.D. Cal. July 16, 2019)...................................................................... 9

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

*Erceg v. LendingClub Corp.*,
   475 F. Supp. 3d 1071 (N.D. Cal. 2020) ............................................................................ 2, 11

*Errington v. Time Warner Cable Inc.*,
   2016 WL 2930696 (C.D. Cal. May 18, 2016) .................................................................... 9

*George v. Manheim Invs., Inc.*,
   731 F. App'x 624 (9th Cir. 2018) ...................................................................................... 8

*Glass v. Carmax*,
   2:25-cv-09975, (C.D. Cal.) ............................................................................................... 6

*Gustavson v. Mars, Inc.*,
   2014 WL 6986421 (N.D. Cal. Dec. 10, 2014) ............................................................ 7, 13

*Kalajian v. Rite Aid Corp.*,
   2018 WL 6262852 (C.D. Cal. Mar. 7, 2018) ..................................................................... 8

*Karoun Dairies, Inc. v. Karlacti, Inc.*,
   2013 WL 4716202 (S.D. Cal. Sept. 3, 2013) .................................................................... 9

*Landis v. N. Am. Co.*,
   299 U.S. 248 (1936) .......................................................................................................... 6

*Leyva v. Certified Grocers of Cal., Ltd.*,
   593 F.2d 857 (9th Cir. 1979) ............................................................................................ 9

*Longitude Licensing Ltd. v. Apple Inc.*,
   2015 WL 12778777 (N.D. Cal. Oct. 29, 2015) ................................................................ 2

*McElrath v. Uber Techs., Inc.*,
   2017 WL 1175591 (N.D. Cal. Mar. 30, 2017) .................................................................. 7

*Muniz v. United Parcel Serv., Inc.*,
   738 F.3d 214 (9th Cir. 2013) .......................................................................................... 10

*Netflix, Inc. v. CA, Inc.*,
   2022 WL 1144631 (N.D. Cal. Mar. 30, 2022) ............................................................ 2, 12

*Orr v. Sunoco LP*,
   Case No. 3:25-cv-03036, (N.D. Tex.) ............................................................................... 6

*Peck v. County of Orange*,
   528 F. Supp. 3d 1100 (C.D. Cal. 2021) .......................................................................... 12

*Phan v. Transamerica Premier Life Ins. Co.*,
   2020 WL 5576358 (N.D. Cal. Sept. 17, 2020) ............................................................ 2, 12

*Prescott v. Nestle USA, Inc.*,
   2020 WL 7053317 (N.D. Cal. Nov. 25, 2020) .................................................................. 9

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

iii

*Ramachandran v. City of Los Altos*,
   2022 WL 2479652 (N.D. Cal. July 6, 2022) ........................................................................... 12

*Rugama v. Chestnut*,
   2026 WL 66901 (E.D. Cal. Jan. 8, 2026) ................................................................................. 6

*San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*,
   2025 WL 2092809 (C.D. Cal. June 18, 2025) ..................................................................... 3, 12

*Spokeo v. Robins*,
   578 U.S. 330 (2016) .......................................................................................................... 5, 11

*U.S. Bank, Nat'l Ass'n v. N. Am. Title Ins. Co.*,
   2020 WL 13145960 (D. Nev. Feb. 20, 2020) ........................................................................ 13

*US Bank Nat'l Ass'n as Tr. to Wachovia Bank, Nat'l Ass'n v. Villa Vecchio Ct. Tr.*,
   2017 WL 11696615 (D. Nev. Dec. 22, 2017) ........................................................................ 12

*Vance v. Google LLC*,
   2021 WL 534363 (N.D. Cal. Feb. 12, 2021) .......................................................................... 10

*Variety Media, LLC v. The Superior Court of the County of Los Angeles*,
   Case No. B350578 .............................................................................................................. *passim*

*In re Zynga Priv. Litig.*,
   750 F.3d 1098 (9th Cir. 2014) ............................................................................................... 14

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

iv

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Two appellate courts are poised to resolve questions that lie at the center of this litigation. On January 8, 2026, the California Court of Appeal, Second Appellate District, issued an Order to Show Cause in *Variety Media, LLC v. The Superior Court of the County of Los Angeles*, Case No. B350578 ("*Variety*"), directing the plaintiff to show cause "why the relief sought in the petition"— an order declaring California Penal Code § 638.51 ("Section 638.51") inapplicable to the internet— "should not be granted." Then, on March 18, 2026, the Ninth Circuit granted permission for defendant to file an interlocutory appeal in *Drummer v. CoStar Group, Inc.*, No. 26-1160 (9th Cir. 2026) ("*Drummer*") to address whether a consumer asserting a claim under Section 638.51 has Article III standing based on the type of information transmitted using website tracking technologies. But the Ninth Circuit recently stayed *Drummer* pending the outcome of *Variety*, which only further underscores the importance of the issues set to be decided in *Variety* and the need for a stay. This Court should follow the Ninth Circuit's lead and stay this case pending the rulings in *Variety* and *Drummer*, which will resolve issues that directly bear on this case.

A stay is plainly warranted here. Plaintiff asserts claims against NerdWallet arising out of its alleged use of tracking technologies on its website, including two claims arising under CIPA, one of which is under Section 638.51. Plaintiff alleges, in substance, that the tracking technologies deployed on NerdWallet's website constitute "pen registers" in violation of Section 638.51(a) of CIPA. The plaintiff in *Variety* brought the same cause of action under Section 638.51. After the trial court overruled Variety's demurrer, Variety successfully petitioned the California Court of Appeal to address whether Section 638.51 applies to internet communications. Accordingly, the California Court of Appeal will soon decide whether Section 638.51, and CIPA more broadly, applies to the same type of conduct alleged in this case.

Moreover, once *Variety* is decided, *Drummer* will provide additional guidance on whether a plaintiff asserting a claim under Section 638.51 has Article III standing. *Drummer* will therefore also resolve issues that are central to this case—Plaintiff's Article III standing.

A brief stay of discovery pending the *Variety* and *Drummer* rulings is proper under these

circumstances. If the Court of Appeal determines that Section 638.51 does not extend to internet-based tracking technologies, Plaintiff's pen register claims will be resolved. And if the Ninth Circuit in *Drummer* holds that an Article III injury cannot arise from the sharing of Plaintiffs' data, Plaintiff's pen register claims will also be resolved. If either court concludes otherwise, the Parties and this Court will have clear guidance for any subsequent motion practice. Either outcome promotes judicial efficiency, conserves the parties' resources, and reduces the risk of inconsistent rulings. Plaintiff recognizes these realities, which is why she is willing to stipulate to a stay of her Section 638.51 claim pending the outcomes in *Variety* and *Drummer*.

Plaintiff will suffer no meaningful prejudice from a brief stay. While any stay involves some delay, "delay alone does not usually constitute undue prejudice." *Longitude Licensing Ltd. v. Apple Inc.*, 2015 WL 12778777, at *6 (N.D. Cal. Oct. 29, 2015). Moreover, any delay would be modest: briefing in *Variety* concluded in April 2026. Supplemental briefing is scheduled to be completed by July 6, 2026 and a decision is expected to follow shortly after. Additionally, the Ninth Circuit's acceptance of the interlocutory appeal in *Drummer* signals the Ninth Circuit's recognition of the importance and urgency of the standing question in internet tracking litigation.

Conversely, requiring NerdWallet to proceed with discovery while *Variety* and *Drummer* are pending could result in significant and unrecoverable prejudice. NerdWallet's expenditure of time and resources on discovery and motion practice that may ultimately be rendered moot in the very near future is precisely the kind of prejudice a stay is designed to prevent. As the court observed in *Erceg v. LendingClub Corp.*, "[i]t would be a waste of judicial resources ... to permit discovery and further proceedings[] when the [appellate] ruling easily could be determinative of Plaintiff's claims in whole or in part." *Erceg v. LendingClub Corp.*, 475 F. Supp. 3d 1071, 1076–77 (N.D. Cal. 2020).

And while Plaintiff contends that the Court should only stay the case as to her Section 638.51 claim and proceed with her remaining claims, courts regularly stay entire cases pending appellate rulings that will impact a certain claim or issues rather than the entire case. *See, e.g., Phan v. Transamerica Premier Life Ins. Co.*, 2020 WL 5576358, at *3 (N.D. Cal. Sept. 17, 2020); *Netflix, Inc. v. CA, Inc.*, 2022 WL 1144631, at *1 (N.D. Cal. Mar. 30, 2022). Indeed, "[c]ontrary to

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

2

Plaintiffs' assertion, the [appellate] decision need not settle all of Plaintiffs' claims to warrant a stay." *San Luis Obispo Coastkeeper v. Cnty. of San Luis Obispo*, 2025 WL 2092809, at *4 (C.D. Cal. June 18, 2025).

Accordingly, NerdWallet respectfully requests that this Court stay discovery and grant its motion for a protective order over any written discovery requests propounded by Plaintiff pending the California Court of Appeal's ruling in *Variety* and the Ninth Circuit's ruling in *Drummer*.

## BACKGROUND

Plaintiff Fatima Davis filed this putative class action in the Superior Court of California, County of Alameda, on February 5, 2026, against NerdWallet, Inc. (Case No. 26CV169084). NerdWallet timely removed the action to this Court on March 18, 2026, where it was assigned Case No. 3:26-cv-02384.

Plaintiff alleges that NerdWallet owns and operates the website https://www.nerdwallet.com (the "Website"), and that when users visit the Website, NerdWallet causes numerous trackers and cookies developed and operated by third-parties to be installed on Website visitors' internet browsers. Because the Trackers allegedly intercept information about Website visitors' interactions with the Website, Plaintiff claims they constitute unlawful wiretapping under CIPA Section 631 and the Federal Electronic Communications Privacy Act ("ECPA"). Plaintiff further alleges that the Trackers capture "routing, addressing, or signaling information" and thus constitute "pen registers" under CIPA Section 638.50(b), making their installation and use without a court order a violation of Section 638.51(a).

### A.    The *Variety* Appeal

On January 23, 2025, Plaintiff Sean Rose ("Rose") filed a putative class action against Variety in the Superior Court of California, County of Los Angeles. *See* Ball Decl., Ex. A. Rose asserts a claim for violation of Section 638.51, alleging that Variety violated that statute by installing on its website certain third-party technologies that constituted "pen register[s]" under Section 638.50. *Id.*, Ex. B, 58.

On July 28, 2025, Variety demurred to Rose's First Amended Complaint. *Id.,* Ex. C. Variety argued, among other things, that "Plaintiff's single claim under California Penal Code

Section 638.51 fails as a matter of law because Section 638.51 does not apply to the kinds of internet communications at issue in this case." *Id.*, Ex. C, at 3.

The Los Angeles Superior Court overruled Variety's Demurrer on September 24, 2025. *Id.*, Ex. D. As relevant here, the court rejected Variety's argument regarding the applicability of Section 638.51, finding that the "broad language" of Section 638.51 and the "pen register" definition in Section 638.50 "plainly extend beyond telephone devices and telephone communications" to include internet-based communications. *Id.*, Ex. D, at 4.

On November 21, 2025, Variety filed with the Second Appellate District of the California Court of Appeal a Petition for Writ of Mandate and/or Prohibition or Other Appropriate Relief (the "Writ"). *Id.*, Ex. E. Through the Writ, Variety sought an order from the Court of Appeal "commanding the [Los Angeles Superior Court] to vacate its order overruling the Demurrer, issue a new and different order sustaining the Demurrer, dismiss the FAC with prejudice, and grant such other relief as may be just." *Id.*, Ex. E, at 28. More specifically, Variety asked the Court of Appeal to find that "Penal code Section 638.51…[does not] appl[y] to online, non-telephonic data collection, specifically in the context of routine, automated software deployed on commercial websites that allows operators of those sites to collect nonpersonal information about the visitors to those websites." *Id.*, Ex. E, at 31.

On January 8, 2026, the Court of Appeal issued an Order to Show Cause directing Rose to demonstrate "why the relief sought in the petition should not be granted." *Id.*, Ex. F, at 1. Variety submitted its reply on April 16, 2026. On May 11, 2026, the court requested supplemental briefing from the parties to be completed by June 15, 2026. *Id.*, Ex. G. On June 9, 2026, the court requested additional supplemental briefing from the parties to be completed by July 6, 2026. *Id.*, Ex. G. A decision is expected to follow shortly thereafter.

**B.    The *Drummer* Appeal**

On October 22, 2025, the district court in *Drummer* denied the defendant's motion to dismiss, holding that the plaintiff had Article III standing to pursue his claim under Cal. Pen. Code Section 638.51. *Drummer v. CoStar Grp., Inc.*, 2025 WL 3190656, at *3–4 (C.D. Cal. Oct. 22, 2025). The defendant thereafter moved for permission to file an interlocutory appeal. The district

court ruled on the motion on February 13, 2026, granting the defendant permission to file an interlocutory appeal of the court's denial of the defendant's motion to dismiss on the question "[d]oes the transmission to third parties of IP addresses and similar information voluntarily shared with websites constitute an injury with a close relationship to a harm traditionally recognized as a basis for a lawsuit." *See Drummer v. CoStar Grp., Inc.*, 2026 WL 712922, at *2 (C.D. Cal. Feb. 13, 2026). In other words, the purpose of the appeal is to determine "whether the [Article III] injury arose upon the sharing of Plaintiffs' data." *Id.* On March 18, 2026, the Ninth Circuit granted the defendant's request for interlocutory appeal under 28 U.S.C. § 1292(b). *See Drummer*, No. 26-1160.

The Ninth Circuit's forthcoming ruling in *Drummer* will provide additional guidance on whether a plaintiff asserting a claim under Section 638.51 has Article III standing, and likely more broadly address whether a consumer suffers an injury-in-fact based on the collection of their website activity. *Drummer* thus has the potential to be dispositive of the entire case given that Article III standing is a jurisdictional prerequisite that cannot be waived. *See Spokeo v. Robins*, 578 U.S. 330, 339 (2016) ("Injury in fact is a constitutional requirement, and '[i]t is settled that Congress cannot erase Article III's standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing.'").

After CoStar filed its opening brief on May 28, 2026, the plaintiff-appellees filed a motion to stay pending the outcome of the appeal in *Variety. See* Ball Decl., Ex. H. They argued that a stay was appropriate because *Variety* would be the first court to address CIPA Section 638.51 and thus "its outcome may narrow the scope of, or even be dispositive of, this case." *Id.* at 2. They further noted that staying the case pending the ruling "on this important issue of unresolved California law" would "preserve the parties' and th[e] Court's resources." *Id.* On June 22, 2026, the Ninth Circuit granted the motion to stay and stayed *Drummer* pending a resolution in *Variety. See id.*, Ex. I.

**C.    Related Cases Already Stayed Pending *Variety* and *Drummer***

The parties in *Drummer* are not alone in seeking a stay pending the outcome of *Variety*. Multiple other cases asserting claims similar to Plaintiff's have been stayed pending the outcome

of *Variety*. *See, e.g., Deivaprakash v. Condé Nast Digital*, Case No. 3:25-cv-04021-RFL, ECF Nos. 46, 47 (N.D. Cal.) (staying case because "[t]he issue raised in the Variety appeal goes directly to the heart of this case" and "[n]o other appellate court—whether the Ninth Circuit or California Court of Appeal—has issued a decision on the issues raised in the Appeal"); *see also Glass v. Carmax*, 2:25-cv-09975, ECF Nos. 24, 25 (C.D. Cal.) (staying case because legal issues raised by Carmax in its Motion to Dismiss the CIPA claim "substantially overlap[s]" with the *Variety* ruling); *Orr v. Sunoco LP*, Case No. 3:25-cv-03036, ECF Nos. 12, 14 (N.D. Tex.) (staying the case pending resolution of the *Variety* appeal because "[t]he question raised in the *Variety Media* appeal…is a threshold question here").

NerdWallet requested that Plaintiff likewise stipulate to stay this case pending the *Variety* and *Drummer* rulings. *See* Ball Decl., Ex. J. Plaintiff agreed to stay the case as to the Section 638.51 claim, but declined to stay the case as to the remainder of her claims. *Id.* Accordingly, NerdWallet now brings this Motion to stay this case and for a protective order from discovery pending the *Variety* and *Drummer* rulings.

## LEGAL STANDARD

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936). This power extends to issuing "stays pending resolution of separate judicial proceedings," *Alzheimer's Inst. of Am. v. Elan Corp. PLC*, 2011 WL 6748634, at *1 (N.D. Cal. Dec. 22, 2011), and is often invoked where, as here, resolution of the separate judicial proceeding may resolve or substantially narrow the underlying action. *See, e.g., Allen v. Protective Life Ins. Co.*, 2024 WL 4957754, at *5 (E.D. Cal. Nov. 27, 2024) (granting the defendants' motion to stay "pending resolution by the Ninth Circuit of important and potentially dispositive issues germane to [this] case"); *Rugama v. Chestnut*, 2026 WL 66901, at *1 (E.D. Cal. Jan. 8, 2026) ("Because the pending appeal in Rodriguez has the potential to be dispositive of issues in this case, and petitioner has not identified any irreparable harm that she would suffer now that she has been granted preliminary relief, the undersigned shall stay consideration of the petition pending resolution of the appeal in Rodriguez.").

In considering whether to stay a case pending resolution of an appeal, the Court considers three factors: "the possible damage which may result from the granting of a stay, the hardship or inequity which a party may suffer in being required to go forward, and the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law which could be expected to result from a stay." *CMAX, Inc. v. Hall*, 300 F.2d 265, 268 (9th Cir. 1962). While "[t]he proponent of a stay bears the burden of establishing its need," *Clinton v. Jones*, 520 U.S. 681, 708 (1997), the decision ultimately "calls for the exercise of a sound discretion" by the court. *CMAX, Inc.*, 300 F.2d at 268.

## ARGUMENT

Each of the relevant factors favors staying this action pending the rulings in *Variety* and *Drummer*.

### A.    Plaintiff Will Suffer No "Damage" From the Stay.

When evaluating whether a stay will "damage" the party opposing it, courts do not consider whether the stay could be detrimental to the party's chances of success. Indeed, that the stay could allow for "evidence ... be[ing] obtained, or rulings [being] made, as a result of the [appellate] proceedings, which will adversely affect the claims which [the opponent of the stay] asserts in the district court[,] ... is not the kind of prejudice which should move a court to deny a requested postponement." *CMAX, Inc.*, 300 F.2d at 269. In that situation, the stay has not damaged anyone; it has merely "revealed" "weakness in [the opposing party's] case." *Id.*

Similarly, delay alone is not a sufficient ground to refuse to stay a case. *Gustavson v. Mars, Inc.*, 2014 WL 6986421, at *3 (N.D. Cal. Dec. 10, 2014) ("[M]ere delay in monetary recovery is an insufficient basis to deny a stay."); *McElrath v. Uber Techs., Inc.*, 2017 WL 1175591, at *5 (N.D. Cal. Mar. 30, 2017) ("[T]he Ninth Circuit has held monetary recovery cannot serve as the foundation to deny a stay." (citing *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1110 (9th Cir. 2005)). This is especially true where, as here, briefing before the California Court of Appeal will likely be complete by July 2026, and the Ninth Circuit's acceptance of the interlocutory appeal in *Drummer* signals the Ninth Circuit's recognition of the importance and urgency of the standing question in internet tracking litigation. *See Agua Caliente Band of Cahuilla Indians v. Coachella Valley Water*

*Dist.*, 2015 WL 13764632, at *3 (C.D. Cal. Sep. 8, 2015) (granting defendant's motion to stay, reasoning among other things, that "briefing schedules for the interlocutory appeal have already been ordered."); *see also Kalajian v. Rite Aid Corp.*, 2018 WL 6262852, at *2 (C.D. Cal. Mar. 7, 2018) (finding no prejudice resulting from a "short, six-month stay"); *George v. Manheim Invs., Inc.*, 731 F. App'x 624, 626 (9th Cir. 2018) (holding a party is not "effectively out of court simply because a stay may have the incidental effect of letting an ongoing state court proceeding settle an issue first," especially where "an opinion should be forthcoming within three months").

Nor does the risk of potentially losing evidence warrant the denial of a stay. NerdWallet is under preservation obligations and could be subjected to sanctions for lost evidence. "[W]ith the appropriate protective measures in place, the risk of potentially lost evidence is insufficient to deny a stay in the face of a pending [appellate] decision that will decide a key legal question in the case." *Aleisa v. Square, Inc.*, 493 F. Supp. 3d 806, 816 (N.D. Cal. 2020).

Plaintiff's willingness to stay the case as to her CIPA Section 638.51 claim demonstrates that a stay would not prejudice her. Indeed, she recognizes the importance of the rulings in *Variety* and *Drummer* and is willing to put her claim on hold until the Court receives guidance. This logic extends to the entire case.

**B.    Absent the Stay, NerdWallet Would Be Severely Prejudiced.**

The *Variety* and *Drummer* appeals will each likely result in one of two significant outcomes. *Variety* will either find that Section 638.51 applies to internet-based technologies, or it will find that it does not. *Drummer* will either find that a plaintiff has Article III standing to bring claims based on the transmission of IP addresses and similar tracking information to third-party technologies, or it will find that no such standing exists. Regardless of how either appellate court decides these questions, however, refusing to stay this case pending those rulings will prejudice NerdWallet.

In the event the Court denies this motion, NerdWallet intends to file a motion to dismiss for lack of Article III standing and a motion for judgment on the pleadings to dismiss Plaintiff's causes of action. Engaging in motion practice and discovery to address the Section 638.51 claim will require the parties and the Court to expend extensive resources—none of which would be necessary

if the Court of Appeal holds that Section 638.51 does not extend to internet-based tracking technologies. Further, if the Ninth Circuit holds in *Drummer* that internet tracking does not give rise to Article III standing, there is no reason for any discovery in this case at all. NerdWallet will therefore be unfairly prejudiced without a stay given the possibility that it—along with the Court and Plaintiff—will be required to expend resources to address issues that may be mooted by the appellate decisions, regardless of the outcome. *See Echevarria v. Aerotek, Inc.*, 2019 WL 3207812, at *3 (N.D. Cal. July 16, 2019) (granting stay, in part, because "[t]he expenditure of money and resources by the parties and the ... court will be wasted in the event that [defendant] prevails on appeal").

On the other hand, if the case is not stayed and the Court of Appeal holds that Section 638.51 does, in fact, apply to the internet, or the Ninth Circuit finds that a consumer asserting a claim under Section 638.51 has Article III standing, then NerdWallet, as well as the Court and Plaintiff, will have been forced to devote time and resources to issues that could otherwise have been avoided. *Errington v. Time Warner Cable Inc.*, 2016 WL 2930696, at *4 (C.D. Cal. May 18, 2016) (issuing stay because, without it, "Defendant may suffer hardship in conducting discovery and trial preparation in light of the uncertain" legal landscape). Just as the court in *Prescott v. Nestle USA, Inc.,* 2020 WL 7053317 (N.D. Cal. Nov. 25, 2020), noted when implementing a stay, "proceeding with the present litigation would require [NerdWallet] to expend needless resources when a stay would allow [it] to wait for definitive guidance." *Id.* at *4; *see also Karoun Dairies, Inc. v. Karlacti, Inc.*, 2013 WL 4716202, at *3 (S.D. Cal. Sept. 3, 2013) (granting stay because "moving forward would require witnesses, jury members, and the Court to waste time on an issue that may be fully adjudicated by the Ninth Circuit").

### C.    <u>A Stay Promotes the Orderly Course of Justice</u>

Courts have wide discretion to stay an action pending "resolution of independent proceedings which bear upon the case" if it "find[s] it is efficient for its own docket and the fairest course for the parties." *Leyva v. Certified Grocers of Cal., Ltd.*, 593 F.2d 857, 863 (9th Cir. 1979) (internal quotations omitted). "This rule ... does not require that the issues in such proceedings are necessarily controlling of the action before the court." *Id.*, at 863–64 (collecting cases). Following

*Leyva*, "courts in this district have routinely granted stays where there are overlapping issues of fact or law with a case before different district courts or on appeal." *Vance v. Google LLC*, 2021 WL 534363, at *3 (N.D. Cal. Feb. 12, 2021) (collecting cases). Indeed, stays are appropriate pending the resolution of "important and potentially dispositive issues germane to th[e] case," especially where the other court's guidance on the issue would "be of valuable assistance to the court." *See, e.g.*, *Allen*, 2024 WL 4957754, at *5 (quoting *Leyva*, at 863).

### 1.      The *Variety* Appeal

There is no dispute that the ruling in *Variety* bears directly on Plaintiff's Section 638.51 claim. The central issue raised in *Variety* is whether California Penal Code Section 638.51 applies to internet-based technologies like the ones at issue here. That is purely a question of statutory interpretation and one which will have profound effects on this case regardless of any factual differences. *Cf. Cartmill v. Sea World, Inc.*, 2010 WL 4569922, at *2 (S.D. Cal. Nov. 5, 2010) (refusing to impose stay where the issue in question was one that "must be made on a case-by-case basis" and where there were sufficient differences in the factual and legal issues raised in the two actions to warrant their independent progression—circumstances not present here).

The issue to be decided both here and in the *Variety* appeal has been the subject of much debate over the last 18 months and has resulted in conflicting rulings. For example, on January 20, 2026, the court in *In re Apple Data Priv. Litig.* noted the "apparent split in authority regarding the proper interpretation of Section 638.51" and described "the question of whether the pen register statute applies outside of the telephone context [a]s a close call." 2026 WL 146025, at *4 (N.D. Cal. Jan. 20, 2026). The "apparent split in authority" noted by the *In re Apple* court has persisted because no appellate court—whether state or federal—has weighed in on the issue. The Court of Appeal's decision in *Variety* will resolve this dispute. It will be the first appellate court to issue an opinion on whether Section 638.51 applies to the internet and, absent extraordinary circumstances, will determine how this Court rules on the issue as well. *See Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) (stating that courts within the Ninth Circuit should "follow a published intermediate state court decision regarding California law unless [they] are convinced that the California Supreme Court would reject it").

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

NERDWALLET'S MOTION TO STAY                                      CASE NO. 3:26-CV-02384-TLT

### 2. The *Drummer* Appeal

The Ninth Circuit's March 18, 2026 order granting permission for the defendant to file an interlocutory appeal in *Drummer* further compels the conclusion that a stay is warranted. In *Drummer*, the Ninth Circuit will address whether a consumer asserting a claim under Cal. Penal Code Section 638.51 has Article III standing based on the type of information transmitted using website tracking technologies. There are thus now two appellate courts set to decide issues that directly bear on this case. Indeed, the Ninth Circuit itself stayed *Drummer* pending the outcome of *Variety*—confirming the logical sequencing of these proceedings and further underscoring why this Court should do the same. The Court therefore should grant the stay to allow time for these appeals to be resolved so that the parties can utilize the appellate guidance, which will reduce the risk of conflicting decisions and avoid duplicative, unnecessary effort.

Proceeding forward in this case risks not only inconsistency with the forthcoming *Variety* guidance on the statutory scope of § 638.51, but also the possibility that the Ninth Circuit's *Drummer* decision will render further action beyond the Court's subject matter jurisdiction by resolving the threshold question of whether Plaintiff has standing to bring any of her claims at all. *See Spokeo*, 578 U.S. at 339. A stay will conserve the resources of both the parties and this Court by avoiding discovery and briefing on issues before appellate guidance is received, regardless of which way either decision comes out. That is precisely the kind of efficiency that the doctrine of judicial economy is designed to promote. *See, e.g.*, *Erceg*, 475 F. Supp. 3d at 1076–77 ("It would be a waste of judicial resources to try to guess (by issuing what amounts to an advisory opinion) how the California Supreme Court will decide these issues, or to permit discovery and further proceedings, when the [forthcoming] ruling easily could be determinative of Plaintiff's claims in whole or in part."); *see also* Fed. R. Civ. P. 26(c).

Plaintiff cannot dispute that all of these reasons support staying this action, which is why she offered to stipulate to stay her Section 638.51 claim pending the resolution of *Variety* and *Drummer*.

### 3.    *Variety* and *Drummer* Are Potentially Dispositive Even if Not Wholly Dispositive.

While Plaintiff agreed to stipulate to stay the case pending the outcome of her Section 638.51 claim, she declined to stipulate to stay the entire action because she asserts that *Variety* and *Drummer* will not impact all of her claims. But "[c]ontrary to Plaintiffs' assertion, the [appellate] decision need not settle all of Plaintiffs' claims to warrant a stay." *San Luis Obispo*, 2025 WL 2092809, at *4. Courts routinely stay entire cases even when only one claim or limited issues will be addressed by the resolution of an appellate decision. *See Phan*, 2020 WL 5576358, at *3 ("Ms. Phan's argument that the pending cases with the appellate courts won't completely dispose of every single merits issue in this case ... is also not a reason to deny the stay. Even though the case will not automatically be won or lost after the resolution of [the appeals], major issues in this case will be clarified by a ruling in even one of those cases."); *Netflix, Inc.*, 2022 WL 1144631, at *1 ("That some or even all claims may survive IPR and/or that IPR will not address all invalidity issues does not negate efficiencies from a stay."); *Peck v. County of Orange*, 528 F. Supp. 3d 1100, 1106–07 (C.D. Cal. 2021) (granting a stay of the entire case despite only limited claims pending on appeal since stay of all claims would "substantially simplify issues, proof, and questions of law"); *Calvillo Manriquez v. DeVos*, 2018 WL 5316174, at *3 (N.D. Cal. Aug. 30, 2018) (concluding that a stay was in the interest of orderly justice even though "the resolution of the issue on appeal will not address all of the claims alleged by [p]laintiffs"); *Ramachandran v. City of Los Altos*, 2022 WL 2479652, at *5 (N.D. Cal. July 6, 2022) ("While resolution of the state court proceeding will not dispose of Mr. Ramachandran's claims in this action, it will undoubtedly simplify the presentation of evidence in this case."); *Adams v. Cnty. of Sacramento*, 2023 WL 3413672 (E.D. Cal. May 12, 2023) (staying entire case pending interlocutory appeal of two of four claims); *US Bank Nat'l Ass'n as Tr. to Wachovia Bank, Nat'l Ass'n v. Villa Vecchio Ct. Tr.*, 2017 WL 11696615 (D. Nev. Dec. 22, 2017) (similar).

Moreover, proceeding with the partial stay suggested by Plaintiff would inject confusion and inefficiencies in this case that outweigh any benefit that could be offered. A partial stay would fracture the litigation into two parallel tracks governed by different timelines and procedural rules.

Courts and parties alike would face the recurring challenge of determining whether a particular argument or issue "belongs" to the stayed claim or to the active ones, increasing the risk of error, duplicative briefing, and disputes over scope. If the stay is later lifted, the parties would then need to re-brief issues that have already been addressed in the active track but must now be revisited in light of new developments — resulting in wasted resources and potential inconsistency.

The confusion is even more acute in discovery. It would be practically impossible to draw a clean line between discovery relevant only to the stayed claim and discovery relevant to the remaining claims. This would invite constant discovery disputes regarding whether particular discovery requests or deposition questions implicate the stayed claim and are therefore off-limits, consuming judicial resources on satellite litigation.

For these reasons, the more efficient approach is to stay the entire case pending the outcomes of *Variety* and *Drummer*, so that the case proceeds on a single, coherent track with consistent briefing deadlines and a unified discovery schedule.

    **4.**    **The Presence of Two Appellate Proceedings Makes the Case for a Stay Even More Compelling**

The presence of two appellate courts set to address central issues in this litigation makes an even more compelling case that a stay promotes judicial economy. The most efficient and effective manner to litigate this case is to do so after both appellate courts have issued their rulings. As noted in *Gustavson*, in granting a stay, the appellate court's "decision is likely to provide substantial guidance, if not new law, that will materially impact the Court's decisions in the instant case." 2014 WL 6986421, at *3. That holds true here. To press forward now without that guidance would only invite conflicting rulings, encourage the expenditure of unnecessary time and expense, and, ultimately, burden an already overburdened judiciary. *U.S. Bank, Nat'l Ass'n v. N. Am. Title Ins. Co.*, 2020 WL 13145960, at *1 (D. Nev. Feb. 20, 2020) (granting stay because it "would simplify the proceedings and promote the efficient use of the parties' and the court's overburdened resources"); *Canal Props. LLC v. Alliant Tax Credit V, Inc.*, 2005 WL 1562807, at *3 (N.D. Cal. June 29, 2005) (granting stay based on "the similarity of issues in the two cases," "the potential for [the non-stayed cases'] preclusive effect," and the "poor use of judicial resources" that would result

from allowing the "substantial litigation [that] would take place…during the pendency of the…appeal").

Moreover, *Variety* will also likely impact Plaintiff's other CIPA claim under Section 631(a). The factual and legal questions underlying both CIPA claims are intertwined as they arise from the same alleged conduct—NerdWallet's alleged use of tracking technologies. Indeed, the Court of Appeal has requested supplemental briefing to address, among other things, whether Section 638.51 "prohibit[s] the use or installation of a pen register only if the communication has content." *See* Ball Decl., Ex. G. Because Plaintiff must show that the intercepted communication has contents to prevail on her Section 631(a) and ECPA claims, *see In re Zynga Priv. Litig.*, 750 F.3d 1098, 1106–07 (9th Cir. 2014), *Variety* will therefore provide helpful guidance on Plaintiff's other statutory claims as well.

Simply put, there is no dispute that *Variety* and *Drummer* are important and potentially dispositive of the Plaintiff's Section 638.51 claim and will directly impact the evidentiary and discovery burdens in this case. If the Court of Appeal determines that Section 638.51 does not apply to internet communications, one of Plaintiff's statutory claims will be eliminated, substantially narrowing the scope of discovery and streamlining any remaining issues. If the Ninth Circuit determines that internet tracking does not give rise to Article III standing, there is no reason for any discovery in this case at all. And with both decisions expected in relatively short order, there is good reason to stay this case pending a ruling from these courts. A stay is plainly warranted under these circumstances.

## CONCLUSION

For the foregoing reasons, NerdWallet respectfully requests that this Court stay all proceedings in this case and issue a protective order pending the California Court of Appeal's ruling in *Variety* and the Ninth Circuit's ruling in *Drummer*.

/ / /

/ / /

/ / /

/ / /

GOODWIN PROCTER LLP
ATTORNEYS AT LAW

14

NERDWALLET'S MOTION TO STAY                              CASE NO. 3:26-CV-02384-TLT

Respectfully submitted,

Dated:      June 24, 2026              By:  */s/ Ryan Ball*
                                           RYAN BALL
                                           *RBall@goodwinlaw.com*
                                           MATTHEW T. BILLECI
                                           *MBilleci@goodwinlaw.com*
                                           **GOODWIN PROCTER LLP**

                                           Attorneys for Defendant
                                           NERDWALLET, INC.