**POTTER HANDY LLP**
Mark D. Potter (SBN 166317)
mark@potterhandy.com
James M. Treglio (SBN 228077)
jimt@potterhandy.com
Isabel Rose Masanque (SBN 292673)
isabelm@potterhandy.com
100 Pine St., Ste 1250
San Francisco, CA 94111
Phone: (858) 375-7385
Fax: (888) 422-5191

Counsel for Plaintiff, on behalf of herself and all others similarly situated

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATIMA DAVIS, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> vs. <br><br> NERDWALLET, INC., a Delaware Corporation; and DOES 1-100, inclusive, <br><br> Defendants. | ) Case No: 3:26-cv-02384-TLT <br> ) <br> ) **PLAINTIFF'S OPPOSITION TO** <br> ) **DEFENDANT'S MOTION TO STAY** <br> ) <br> ) Hearing Date: October 13, 2026 <br> ) Hearing Time: 2:00 p.m. <br> ) Courtroom: 9 <br> ) <br> ) Hon. Trina L. Thompson <br> ) <br> ) <br> ) <br> ) <br> ) |

# **TABLE OF CONTENTS**

I.      INTRODUCTION.............................................................................................................. 1

II.     FACTUAL AND PROCEDURAL BACKGROUND........................................................ 2

III.    LEGAL STANDARD ..................................................................................................... 3

IV.     ARGUMENT .................................................................................................................. 4

        A.      Plaintiff Will Suffer Significant Damage from a Stay ............................................. 4

        B.      Absent a Stay, Defendant Will Not Suffer the Required Hardship........................... 5

        C.      A Stay Does Not Promote the Orderly Course of Justice ........................................ 6

        D.      *Variety* and *Drummer* Are Not Potentially Dispositive of the Entire Action ........... 9

        E.      Two Sequential Appellate Proceedings Make a Full Stay Less, Not More, Warranted ..................................................................................................................... 10

        F.      Alternatively, Any Stay Should Be Narrowly Limited to the Section 638.51 Claim  11

V.      CONCLUSION ................................................................................................................ 12

**TABLE OF AUTHORITIES**

**Cases**

*Adams v. Cnty. of Sacramento*, 2023 WL 3413672 (E.D. Cal. May 12, 2023) ............................... 9

*Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007) ...................................................................................................................... 3

*Calvillo Manriquez v. DeVos*, 2018 WL 5316174, at \*3 (N.D. Cal. Aug. 30, 2018) ...................... 9

*Clinton v. Jones*, 520 U.S. 681, 708 (1997) ................................................................................. 1, 3

*CMAX, Inc. v. Hall*, 300 F.2d 265, 268–69 (9th Cir. 1962) .......................................................... 1, 3

*Deivaprakash v. Condé Nast Digital*, No. 3:25-cv-04021-RFL, ECF Nos. 46, 47 (N.D. Cal.)...... 11

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066-67 (9th Cir. 2007) ............................................................................................................................. 2, 3

*Glass v. Carmax*, No. 2:25-cv-09975, ECF Nos. 24, 25 (C.D. Cal.) .............................................. 11

*Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936)...................................................................... 1, 3

*Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005)...................................................... 3, 5

*Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013) ........................................... 7

*Netflix, Inc. v. CA, Inc.*, Nos. 21-cv-03649-EMC, 22-cv-00373-EMC, 2022 WL 1144631, at \*1 (N.D. Cal. Mar. 30, 2022) ................................................................................................. 9

*Orr v. Sunoco LP*, No. 3:25-cv-03036, ECF Nos. 12, 14 (N.D. Tex.)........................................... 11

*Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1106–07 (C.D. Cal. 2021) ................................... 9

*Phan v. Transamerica Premier Life Ins. Co.*, No. 20-cv-03665-BLF, 2020 WL 5576358, at \*3 (N.D. Cal. Sept. 17, 2020)................................................................................................. 9

*Ramachandran v. City of Los Altos*, 2022 WL 2479652, at \*5 (N.D. Cal. July 6, 2022)................. 9

*Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016)................................................................................... 8

*U.S. Bank Nat'l Ass'n as Tr. to Wachovia Bank, Nat'l Ass'n v. Villa Vecchio Ct. Tr.*, 2017 WL 11696615 (D. Nev. Dec. 22, 2017) ................................................................................. 9

*Yong v. INS*, 208 F.3d 1116, 1119–20 (9th Cir. 2000).................................................................... 3

**Statutes**

CIPA § 638.51 ............................................................................................................................ 1, 12

## I.    INTRODUCTION

Defendant Nerdwallet, Inc.'s ("Defendant") asks the Court to stay the entire case and halt discovery until two separate appellate proceedings—*Variety* in the California Court of Appeal and *Drummer* in the Ninth Circuit—run their course. Def. Mot. at 1, 3, 6, 14. Defendant's request is sweeping: it seeks to stay all proceedings and obtain a protective order against written discovery, even though Defendant acknowledges Plaintiff offered a narrower stipulation limited to the CIPA § 638.51 claim. Def. Mot. at 3, 6, 11-12, 14.

The issues for decision are straightforward: whether Defendant has carried its heavy burden to justify a blanket stay of every claim and a protective order halting discovery; whether Plaintiff will suffer concrete prejudice from delayed relief and delayed discovery in a live website-tracking case; and whether, if any stay is entered, it should be limited to the CIPA § 638.51 claim while the remaining claims, preservation, discovery, and case management proceed.

That request should be denied. Under *Landis*, *CMAX*, and *Clinton*, Defendant bears a heavy burden to show a clear case of hardship or inequity and a stay tailored to genuine necessity, not convenience. *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936); *CMAX, Inc. v. Hall*, 300 F.2d 265, 268–69 (9th Cir. 1962); *Clinton v. Jones*, 520 U.S. 681, 708 (1997). Defendant does not meet that burden because its claimed hardship is merely ordinary litigation burden—discovery, motion practice, and expense—and its judicial-economy theory materially overstates what *Variety* and *Drummer* could decide. Even on Defendant's own description, *Variety* concerns whether § 638.51 reaches internet-based pen-register theories, while *Drummer* concerns whether disclosure of IP addresses and similar information voluntarily shared with websites constitutes Article III injury. Def. Mot. at 1, 4-5, 10-11. Neither proceeding would resolve Plaintiff's entire case.

The Complaint alleges much more. Plaintiff pleads not only a § 638.51 pen register theory, but also claims under CIPA § 631, the Federal Wiretap Act, the California Computer Data Access and Fraud Act, the California constitutional right to privacy, and the UCL. Compl. ¶¶ 111-172. She alleges 132 third-party trackers, two session recorders, multiple device-fingerprinting tools, real-time transmission of browsing behavior and identifying information to numerous third parties, nonconsensual installation of code, continued operation even after cookie opt-out, and a request for

injunctive relief to stop ongoing privacy intrusions. Compl. ¶¶ 2-5, 43-47, 54-62, 66-74, 80, 93-101, Prayer for Relief ¶ 8. A complete stay would therefore freeze claims and discovery that neither *Variety* nor *Drummer* will dispose of.

At minimum, if the Court believes some pause is warranted, any stay should be narrowly confined to Plaintiff's § 638.51 claim. The rest of the case—including preservation obligations, common fact discovery, and case management—should proceed. That narrower alternative tracks Plaintiff's prior offer, avoids an indefinite and overbroad shutdown of the action, and best accords with *Landis*'s requirement that any stay be moderate rather than immoderate. *Dependable Highway Exp., Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066–67 (9th Cir. 2007).

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff filed this putative class action in Alameda County Superior Court on February 5, 2026, and Defendant removed it on March 18, 2026. Def. Mot. at 3. Defendant's motion describes the case as arising from Defendant's use of website tracking technologies that allegedly intercept user interactions, capture "routing, addressing, or signaling information," and support claims under both CIPA § 631 and § 638.51. Def. Mot. at 3.

The Complaint alleges that when users visit Defendant's website, Defendant causes numerous trackers and cookies developed and operated by third parties—including Meta, Google, Heap, Microsoft, AppNexus, Pinterest, Outbrain, Taboola, TikTok, The Trade Desk, Criteo, and ThreatMetrix—to be installed in users' browsers, and then uses those tools to collect identifying information and behavioral data. Compl. ¶¶ 1-2, 43-44, 66-69. It alleges real-time interception and disclosure of website interactions, unlawful wiretapping under CIPA § 631 and the ECPA, unlawful pen-register use under § 638.51, unauthorized access and use of users' computer systems and data under the CDAFA, invasion of privacy under the California Constitution, and derivative UCL liability. Compl. ¶¶ 3-5, 63-90, 111-172.

The Complaint further alleges tracking methods well beyond the narrow issues Defendant attributes to *Variety* and *Drummer*: advanced cross-site cookies, pixels, device fingerprinting, canvas fingerprinting, IP address-based identification, session recording, user-input capture, page-view and URL tracking, and data sharing with multiple advertising networks. Compl. ¶¶ 7-62. It

alleges forensic testing identified 132 third-party trackers, including 47 cookies, 9 different canvas fingerprints, and 2 session recorders. Compl. ¶ 44.

Critically, Plaintiff alleges live, ongoing privacy injury. She alleges that trackers deploy immediately upon landing on the site, before any user can configure privacy choices; that opting out of cookies does not stop session recorders, canvas fingerprinting, or other non-cookie scripts; that dozens of trackers continue operating even after opt-out; and that Plaintiff seeks to access the website without third-party tracking interception or, at minimum, with a meaningful choice about what data is collected. Compl. ¶¶ 70-74, 93-101, Prayer for Relief ¶ 8.

### III.    LEGAL STANDARD

A district court has discretion to stay proceedings, but that discretion is constrained. *Landis* holds that the party seeking a stay "must make out a clear case of hardship or inequity in being required to go forward" if there is "even a fair possibility" that a stay will damage the nonmovant. *Landis*, 299 U.S. at 255. It also cautions that only "rare circumstances" justify forcing one litigant to stand aside while another settles the governing rule of law. *Id. CMAX* directs courts to weigh three factors: possible damage from a stay, hardship or inequity from going forward, and the orderly course of justice measured by simplification of issues, proof, and questions of law. *CMAX*, 300 F.2d at 268. And *Clinton* reiterates that the proponent bears the burden of establishing the need for a stay. *Clinton*, 520 U.S. at 708. Defendant itself invokes those standards. Def. Mot. at 6-7.

Ninth Circuit law also makes clear that ordinary litigation burdens do not suffice. *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1112 (9th Cir. 2005), explains that "being required to defend a suit, without more, does not constitute a clear case of hardship or inequity." A stay also must be moderate in scope and duration; an indefinite or immoderate stay is disfavored. *Dependable Highway Exp.*, 498 F.3d at 1066–67; *Yong v. INS*, 208 F.3d 1116, 1119–20 (9th Cir. 2000); see also *Blue Cross & Blue Shield of Ala. v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). Those principles independently defeat the motion because Defendant seeks a full stop of the case pending two serial appellate proceedings, one of which has already been stayed pending the other. Def. Mot. at 1, 5, 11.

## IV.    ARGUMENT

### A. Plaintiff Will Suffer Significant Damage from a Stay

Defendant's first major contention is that Plaintiff will suffer no meaningful prejudice from delay because "delay alone" is insufficient and because preservation obligations can protect against evidence loss. Def. Mot. at 2, 7-8. That framing is incomplete and materially understates the actual prejudice here. Defendant is not asking to defer a purely monetary dispute. Plaintiff seeks to stop ongoing interception, real-time disclosure, and tracking practices, and seeks meaningful injunctive relief concerning how Defendant deploys trackers and handles user data. Compl. ¶¶ 5, 68-74, 101, 155, 165, 172, Prayer for Relief ¶ 8. Delay therefore means delayed relief from alleged ongoing privacy violations, not merely deferred recovery of money.

Defendant also calls the requested pause "brief," but its own motion shows otherwise. Defendant asks the Court to wait for both *Variety* and *Drummer*, while simultaneously acknowledging that the Ninth Circuit has already stayed *Drummer* pending *Variety*. Def. Mot. at 1-2, 5, 11, 14. That makes the requested stay sequential and contingent, not meaningfully bounded. The Court would be freezing this action first for *Variety*, then for whatever additional time *Drummer* requires after *Variety* is resolved. That is the kind of uncertain, open-ended delay *Landis* and its Ninth Circuit progeny caution against.

Nor does a generic preservation obligation eliminate prejudice in a case that the Complaint pleads as involving live website code, third-party website integrations, consent flows, advertising tags, fingerprinting scripts, and vendor-operated tracking architecture. Compl. ¶¶ 2, 7-62, 66-74. On those allegations, timely discovery matters because the relevant evidence is not limited to static documents; it includes how Defendant's website and third-party scripts operated, what consent choices were presented, what technologies ran before and after opt-out, what data was transmitted, and how Defendant and its vendors processed or retained that data. Compl. ¶¶ 43-44, 58-62, 66-74, 93-101. Plaintiff need not prove spoliation to show prejudice from delay. She need only show a fair possibility of prejudice, and a later snapshot or generic preservation obligation may not recreate the operative configuration Plaintiff encountered or the configurations that existed during the class period. That reasonable litigation-prejudice concern is especially acute where the Complaint alleges

multiple third-party tools, immediate deployment before consent choices can be configured, non-cookie scripts, and continued operation after opt-out. Compl. ¶¶ 44-47, 61-62, 70-74, 101.

Delay also prejudices class-related discovery. Plaintiff pleads a putative nationwide class and California subclass and alleges that the size, operation, and common proof for those classes must be established through Defendant's records and discovery. Compl. ¶¶ 102-110. A full stay postpones discovery into identification of class members, code and script implementation evidence, third-party vendor relationships, data flows, retention practices, consent mechanisms, and common proof bearing on class certification. Those are concrete litigation consequences, not abstract complaints about delay.

Defendant lastly argues that Plaintiff's willingness to stay the § 638.51 claim proves a broader stay causes no prejudice. Def. Mot. at 2, 6, 8, 11-12. The opposite is true. Plaintiff's willingness to stipulate to a narrow stay confirms she has already proposed the proportionate solution: pause only the claim directly implicated by *Variety* and *Drummer*, while allowing the rest of the case to proceed. That proposal underscores the overbreadth of Defendant's request, not the absence of prejudice.

### B. Absent a Stay, Defendant Will Not Suffer the Required Hardship

Defendant next contends that without a stay it will be "severely prejudiced" by having to engage in discovery and motion practice that may later prove unnecessary. Def. Mot. at 8-9. But that is the ordinary burden of litigation, and *Lockyer* squarely holds that being required to defend a lawsuit, without more, does not amount to the clear hardship or inequity required under *Landis*. *Lockyer*, 398 F.3d at 1112. Defendant identifies no extraordinary injury, no nonrecoverable business disruption beyond normal defense costs, and no case-specific inequity distinct from what every defendant faces when a complaint survives long enough for Rule 26 obligations and Rule 12 motion practice to arise.

Indeed, Defendant's motion highlights its lack of true hardship. It says that, if no stay is granted, it "intends to file a motion to dismiss for lack of Article III standing and a motion for judgment on the pleadings." Def. Mot. at 8. That is simply standard federal litigation. A party cannot manufacture hardship by pointing to its own ordinary intention to file pleadings and dispositive

motions. If that were enough, *Landis*'s "clear case of hardship or inequity" requirement would collapse into a routine defense-side preference for delay.

Defendant's hardship argument also rests on an overstatement of prospective mootness. It assumes that *Variety* could eliminate all work on the § 638.51 claim and that *Drummer* could eliminate "any discovery in this case at all." Def. Mot. at 2, 8-9, 14. But the Complaint pleads multiple claims and multiple injury theories independent of the narrow issues identified in those appellate proceedings. Even if § 638.51 were narrowed or eliminated, Plaintiff's § 631, ECPA, CDAFA, California constitutional privacy, and UCL claims would remain. Compl. ¶¶ 111-172. And even if *Drummer* addresses whether the disclosure of IP addresses and similar voluntarily shared information is enough for standing, the Complaint alleges much more than that: session recordings, button clicks, page views, content views, URLs visited, form-input capture, device fingerprints, real-time disclosures to third parties, continued tracking after opt-out, and an alleged increase in targeted loan-related advertising after Plaintiff's visit. Compl. ¶¶ 12-20, 38-62, 68-74, 80, 93-101. That broader pleading defeats Defendant's claim that the entire action may become moot.

Nor has Defendant made the independent good-cause showing required for a protective order under Rule 26(c). Its protective-order request rises and falls with its overbroad stay request. Because ordinary litigation expense and ordinary discovery obligations do not establish *Landis* hardship, they likewise do not justify a blanket protective order halting Plaintiff's written discovery.

### C. A Stay Does Not Promote the Orderly Course of Justice

#### 1. The *Variety* Appeal

Defendant's first judicial-economy point is that *Variety* supposedly goes to the "center" of this litigation because it will decide whether § 638.51 applies to internet-based technologies. Def. Mot. at 1, 10. At most, *Variety* may provide future guidance on a limited legal issue relevant to Plaintiff's § 638.51 claim. It is not controlling today, because no appellate decision has yet issued; and even when it does issue, Defendant overstates its breadth. Defendant's own description of the *Variety* writ shows the issue is framed as whether § 638.51 applies "to online, non-telephonic data collection, specifically in the context of routine, automated software deployed on commercial

websites that allows operators of those sites to collect nonpersonal information about the visitors to those websites." Def. Mot. at 4. That is a materially narrower question than the Complaint here.

The Complaint here does not allege only "routine" software collecting "nonpersonal information." It alleges personal identifying information, user behavior and activity data, session replays, real-time interception and disclosure, cross-site profiling, device fingerprinting, code installation on users' browsers, and collection and transmission of data to multiple third parties for advertising, analytics, and targeting. Compl. ¶¶ 2, 7-62, 66-74, 80, 93-101. It further alleges two session recorders, 132 trackers, nine separate fingerprinting scripts, and immediate deployment before users can configure consent. Compl. ¶¶ 44-47, 61-62, 70-74. Those allegations go well beyond the narrower pen-register question Defendant extracts from *Variety*.

Defendant also suggests *Variety* will decide whether "Section 638.51, and CIPA more broadly, applies to the same type of conduct alleged in this case." Def. Mot. at 1, 10. That assertion is overstated. *Variety* concerns § 638.51. The presence in this case of a separate § 631 claim does not make *Variety* a "CIPA more broadly" case in any dispositive way. Plaintiff's § 631 claim turns on interception of communications and their contents; the Complaint specifically alleges session-recording and content-interception theories, and the motion itself acknowledges Plaintiff separately pleads wiretapping under § 631 and the ECPA. Def. Mot. at 3; Compl. ¶¶ 3, 38-47, 77-80, 111-116, 124-135. A ruling on whether internet-based tracking can qualify as a pen register under § 638.51 would not decide whether Defendant's separate conduct constitutes interception of contents under § 631 or the federal Wiretap Act.

*Muniz* does not help Defendant. The proposition that federal courts ordinarily follow published intermediate California appellate decisions once issued says nothing about whether this Court should stop an entire federal case before any such opinion exists, when most claims will remain regardless. *Muniz v. United Parcel Serv., Inc.*, 738 F.3d 214, 219 (9th Cir. 2013). At most, *Variety* may later guide briefing on the § 638.51 claim. That does not justify a blanket stay now.

## 2. The *Drummer* Appeal

Defendant's second judicial-economy point is that *Drummer* will address Article III standing and could be "dispositive of the entire case." Def. Mot. at 5, 11. Defendant again overstates the

appeal's actual scope. Its own motion says the certified question is whether "the transmission to third parties of IP addresses and similar information voluntarily shared with websites" constitutes an injury closely related to a traditionally recognized harm, or, in Defendant's summary, whether the injury arose upon the sharing of plaintiffs' data. Def. Mot. at 5. That is not the whole case here. It is a narrower standing question tied to a specific kind of information and a specific theory of injury.

By contrast, this Complaint alleges content-level and behavior-level interception far beyond IP-address transmission. Plaintiff alleges session-recording replays, button clicks, scrolling, page navigation, time spent on each element, content views, URLs visited, device and browser characteristics, unique identifiers, device fingerprints, and real-time transmission of behavioral data to third parties. Compl. ¶¶ 12-20, 38-62, 68-69, 77-80, 93-101. She also alleges continued tracking even after cookie opt-out and an immediate increase in targeted loan-related advertising after her visit. Compl. ¶¶ 70-74, 97. On those allegations, *Drummer* cannot fairly be characterized as a proceeding that will resolve all standing questions for all claims in this action.

Defendant's reliance on *Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016) adds little. Of course, standing is jurisdictional. But Defendant's motion improperly leaps from that uncontroversial proposition to the conclusion that *Drummer* "has the potential to be dispositive of the entire case." Def. Mot. at 5, 11. The problem is not the proposition that standing matters; the problem is Defendant's unsupported assumption that *Drummer*'s limited question about IP addresses and similar voluntarily shared information will dictate the standing analysis for Plaintiff's broader allegations of interception, disclosure, loss of control over personal data, privacy invasion, unauthorized software installation, and ongoing requested injunctive relief. Compl. ¶¶ 68-74, 93-101, 134-135, 155, 164-172, Prayer for Relief ¶ 8.

The procedural posture of *Drummer* further weakens Defendant's request. Defendant argues the Ninth Circuit's own stay order "underscores" the need for a stay here. Def. Mot. at 1, 5, 11. But the more salient point is that *Drummer* is not moving independently toward decision. It has already been stayed pending *Variety*. Def. Mot. at 5. That means Defendant is asking this Court to impose

an indefinite federal-court standstill based on an appellate sequence that has not even begun to run fully. That is not a reason for a broader stay; it is a reason for caution.

### D. *Variety* and *Drummer* Are Not Potentially Dispositive of the Entire Action

Defendant's next contention is that a stay is still proper even if *Variety* and *Drummer* do not dispose of everything. Def. Mot. at 12. That abstract proposition is unobjectionable; courts plainly have discretion to stay cases in appropriate circumstances. But it does not carry Defendant's burden here, because the point is not whether appellate guidance can ever justify a stay. The point is whether Defendant has shown a clear case for staying this entire case—including claims and discovery that those proceedings will not decide. It has not.

The Complaint asserts five categories of claims: CIPA, the Wiretap Act, CDAFA, California constitutional privacy, and UCL. Compl. ¶¶ 111-172. Defendant's motion attempts to convert two potentially relevant appellate proceedings into a reason to halt all of them. But even a complete defense win in *Variety* would eliminate, at most, only the § 638.51 theory. It would not decide the § 631 claim, the ECPA claim, the CDAFA claim, the constitutional privacy claim, or the UCL claim. Compl. ¶¶ 111-172. And even a favorable *Drummer* ruling on its certified question would still leave unresolved whether Plaintiff's broader alleged injuries and other theories satisfy Article III. Defendant does not seriously engage with that mismatch.

Defendant's cases permitting full stays despite partial overlap are distinguishable and do not justify the relief sought here. *Phan, Netflix, Peck, Calvillo Manriquez, Ramachandran, Adams*, and *Villa Vecchio* merely recognize that the existence of unresolved claims does not automatically preclude a stay. *Phan v. Transamerica Premier Life Ins. Co.*, No. 20-cv-03665-BLF, 2020 WL 5576358, at *3 (N.D. Cal. Sept. 17, 2020); *Netflix, Inc. v. CA, Inc.*, Nos. 21-cv-03649-EMC, 22-cv-00373-EMC, 2022 WL 1144631, at *1 (N.D. Cal. Mar. 30, 2022); *Peck v. Cnty. of Orange*, 528 F. Supp. 3d 1100, 1106–07 (C.D. Cal. 2021); *Calvillo Manriquez v. DeVos*, 2018 WL 5316174, at *3 (N.D. Cal. Aug. 30, 2018); *Ramachandran v. City of Los Altos*, 2022 WL 2479652, at *5 (N.D. Cal. July 6, 2022); *Adams v. Cnty. of Sacramento*, 2023 WL 3413672 (E.D. Cal. May 12, 2023); *U.S. Bank Nat'l Ass'n as Tr. to Wachovia Bank, Nat'l Ass'n v. Villa Vecchio Ct. Tr.*, 2017 WL 11696615 (D. Nev. Dec. 22, 2017). Def. Mot. at 12. None relieves Defendant of its burden under *Landis* and

*CMAX* to show concrete hardship, real simplification, and a stay no broader than necessary. None involved this Complaint's mix of privacy, interception, software-installation, and consumer-tracking allegations across multiple statutory and constitutional claims. And none establishes a rule that once a single claim may be narrowed by an appellate case, all remaining claims and all discovery should stop.

Defendant's assertion that a partial stay would create intolerable "confusion" is likewise overstated. Def. Mot. at 12-13. Federal courts routinely manage cases with claim-specific rulings, phased discovery, and issue-specific pauses. Here, the logical line is straightforward: if the Court wishes to await *Variety* and *Drummer*, it can stay only the § 638.51 claim while allowing the remaining claims and common discovery to proceed. That would be far less disruptive than freezing the case entirely.

**E. Two Sequential Appellate Proceedings Make a Full Stay Less, Not More, Warranted**

Defendant's final contention is that the existence of two appellate proceedings makes the stay request "even more compelling." Def. Mot. at 13. The reality is the reverse. Two pending proceedings do not make the requested stay narrower or more definite; they make it longer and less predictable. Defendant seeks to stack one uncertain appellate timetable onto another even though *Drummer* has already been stayed pending *Variety*. Def. Mot. at 5, 11. That serial structure makes the requested stay more immoderate, not more justified.

Defendant also attempts to bootstrap *Variety* into guidance for Plaintiff's § 631 and ECPA claims because both CIPA claims involve related tracking conduct and because *Variety* may touch issues concerning "content." Def. Mot. at 14. That again goes too far. Plaintiff's § 631 and ECPA claims turn on alleged interception and disclosure of communications and their contents; the Complaint alleges session recordings, browsing behavior, form-related input, and behavioral disclosures to third parties. Compl. ¶¶ 38-47, 68-69, 77-80, 124-135. Whatever *Variety* may say in resolving § 638.51's online application, it will not adjudicate those distinct statutory elements for those separate claims. Defendant's "intertwined" label cannot convert potentially helpful dicta into case-dispositive guidance.

The same overreach infects Defendant's reliance on the three "related cases" it says were already stayed— *Deivaprakash v. Condé Nast Digital*, No. 3:25-cv-04021-RFL, ECF Nos. 46, 47 (N.D. Cal.); *Glass v. Carmax*, No. 2:25-cv-09975, ECF Nos. 24, 25 (C.D. Cal.); and *Orr v. Sunoco LP*, No. 3:25-cv-03036, ECF Nos. 12, 14 (N.D. Tex.). Def. Mot. at 5-6. Defendant cites docket entries, not reasoned published opinions. One is from another district entirely, and another is from the Northern District of Texas. At most, those orders show that some courts have exercised discretion differently on materially different records. They do not establish controlling law, and they do not answer the central problem here: Defendant seeks to halt claims and discovery far beyond the narrow disputes in *Variety* and *Drummer*.

### F. Alternatively, Any Stay Should Be Narrowly Limited to the Section 638.51 Claim

If the Court concludes some stay is appropriate, it should adopt the narrower alternative Plaintiff already offered: stay only the § 638.51 claim pending *Variety* and *Drummer*, while allowing the remaining claims, common fact discovery, preservation obligations, and case management to proceed. Defendant's motion itself confirms Plaintiff agreed to that approach. Def. Mot. at 2, 6, 11-12.

That narrower course is the one most consistent with *Landis*. It targets the claim directly implicated by the pending appellate proceedings while avoiding needless prejudice from halting the entire case. It allows the parties to preserve and develop evidence relevant to all claims, including code and script implementation evidence, tracking architecture, website consent mechanisms, vendor relationships, data flows, retention practices, and class-related proof. Compl. ¶¶ 2, 43-44, 58-62, 66-74, 102-110. It prevents the requested protective order from becoming a vehicle for unnecessary delay. And it avoids the inequity of stopping claims that, on Defendant's own account, neither *Variety* nor *Drummer* will dispose of.

A limited stay also answers Defendant's supposed efficiency concerns. The Court can sequence the case so that no party must brief or litigate the merits of § 638.51 while the appellate courts are considering related questions, yet the parties can still exchange Rule 26 disclosures, negotiate an ESI protocol, preserve vendor and website evidence, and take discovery relevant to the

non-§ 638.51 claims. That is a routine and manageable form of case administration. It protects Plaintiff from immoderate delay while giving Defendant all the protection it legitimately needs.

## V.　CONCLUSION

Defendant has not carried its heavy burden under *Landis*, *CMAX*, and *Clinton*. Its motion rests on ordinary litigation burden, speculative forecasts about future appellate guidance, and a material overstatement of what *Variety* and *Drummer* could actually decide. Plaintiff, by contrast, has shown meaningful prejudice from delay, identified the many claims and factual issues that will remain regardless of those appeals, and proposed a narrower alternative that directly addresses the only claim truly implicated by both proceedings.

The Court should therefore deny Defendant's Motion to Stay in full, including Defendant's request for a protective order against Plaintiff's written discovery. In the alternative, the Court should impose only a narrow stay limited to Plaintiff's CIPA § 638.51 claim, while permitting the remainder of the action, all preservation obligations, common factual discovery, Rule 26 and ESI proceedings, and case-management proceedings to move forward.

Dated: July 8, 2026　　　　　　　　　　　　　　**POTTER HANDY, LLP**

　　　　　　　　　　　　　　　　　　　　　　　　/s/ James M. Treglio
　　　　　　　　　　　　　　　　　　　By: _____
　　　　　　　　　　　　　　　　　　　　　James M. Treglio
　　　　　　　　　　　　　　　　　　　　　Isabel Rose Masanque
　　　　　　　　　　　　　　　　　　　　　Attorneys for Plaintiff